**MATTHEW HARP, JR.,**

                            **Petitioner,**

**-vs-**                                                            **Case No.  6:08-cv-555-Orl-19KRS**

**UNITED STATES OF AMERICA,**

                            **Respondent.**
_____

# ORDER

This case comes before the Court on the following:

1.      Motion to Set Aside Judgment and Sentence by Petitioner Matthew Harp (Doc. No. 1, filed Apr. 4, 2008);

2.      Motion to Dismiss Section 2255 Motion by Respondent United States of America (Doc. No. 3, filed June 9, 2008);

3.      Response to United States' Motion to Dismiss by Petitioner (Doc. No. 9, filed July 31, 2008); and

4.      Notice of Filing Exhibits in Response to United States' Motion to Dismiss (Doc. No. 10, filed Aug. 1, 2008).

## Background

Petitioner Matthew Harp and approximately thirty other individuals were indicted on July 12, 2006 for one count of conspiracy to possess with intent to distribute and to distribute three types of controlled substances: over five kilograms of a mixture and substance containing a detectable amount of cocaine hydrochloride, over fifty grams of a mixture and substance containing a

detectable amount of cocaine base, and over fifty kilograms of marijuana, all in violation of Title 21 of the United States Code, Sections 841(a)(1) and 846 (2006). (Crim. Doc. No. 212.)[1] Petitioner entered into a plea agreement with the Government. (Doc. No. 3-2; Crim. Doc. No. 874, filed Oct. 19, 2006.) Pursuant to this agreement, Petitioner filed a Waiver of Indictment, (Crim. Doc. No. 810, filed Oct. 18, 2006), and the Government filed a Superseding Information charging Petitioner with the knowing and willful use of a telephone in the process of committing, causing, and facilitating an unlawful conspiracy to possess with intent to distribute over five kilograms of cocaine hydrochloride, (Crim. Doc. No. 837, filed Oct. 19, 2006). The statutory maximum term of imprisonment for this charge was four years (forty-eight months). 21 U.S.C. § 843(d)(1). Petitioner, represented by attorney Charles L. Handlin, III, agreed to plead guilty to the sole count of this Superseding Information. (Doc. No. 3-2 at 1.) The Government agreed to dismiss the original conspiracy charge against Petitioner. (*Id.* at 2.)

The following facts are derived from the factual recitation in the plea agreement, (*id.* at 11-15), as admitted by Petitioner during his change-of-plea hearing, (Doc. No. 3-3 at 30-32, 35, 40-41), and are intended only to give context to the Motion currently pending before the Court. The Government stated that its evidence at trial would demonstrate that Petitioner participated in a drug distribution conspiracy which involved the trafficking of cocaine hydrochloride, cocaine base, and marijuana. This conspiracy began as early as 1999 and continued until June 21, 2006. Two of Petitioner's co-defendants, Delvin Bernard Flowers and Mark Antonio Weaver, were the leaders of the drug trafficking organization. The Government contended that Petitioner had at least a general

---

[1] Documents from the underlying criminal case, 6:06-cr-125-Orl-19KRS, will be cited as "Crim. Doc. No. ___."

understanding of the unlawful purposes of the drug trafficking organization, as well as the nature and anticipated weight of the controlled substances involved.

On May 1, 2006, law enforcement agents intercepted two telephone conversations between Flowers and Petitioner. During the first intercepted call, Petitioner used a telecommunication device (cellular telephone) to warn Flowers of undercover police vehicles attempting to conduct physical surveillance of Flowers at his residence on Otterbein Avenue in Cocoa, Florida. This residence served as the primary location for the organization's drug trafficking activities. Petitioner warned Flowers about the undercover vehicles because Petitioner had knowledge of Flowers' drug distribution, and he wanted to assist Flowers in detecting police surveillance vehicles so that Flowers could continue his illegal activities and avoid arrest.

In the second intercepted telephone conversation, Petitioner and Flowers discussed a covert law enforcement surveillance camera located on a concrete pole near Flowers' Otterbein Avenue residence. Petitioner suggested that Flowers "take the whole thing off." After speaking with Petitioner, Flowers directed co-conspirator Aldo Ray Johnson to disable the surveillance camera. Johnson later disabled the camera.

Further investigation demonstrated that Petitioner directly assisted Flowers and other co-conspirators in seeking out undercover law enforcement vehicles and alerting members of the drug trafficking organization to the detection of these vehicles. After Petitioner warned Flowers about the undercover vehicles conducting surveillance on the Otterbein Avenue residence, Flowers discontinued the use of this residence to store the controlled substances. Instead, Flowers continued the drug trafficking activities of the organization by using other locations and rental vehicles for the remainder of the conspiracy which continued to approximately June 21, 2006. In addition, Petitioner

and other co-conspirators discovered the covert location of the Brevard County Sheriff's Office Special Investigations Unit. Petitioner and others conducted counter-surveillance of this location in order to identify undercover law enforcement vehicles. Some of these vehicles were discussed by Petitioner during his intercepted telephone calls.

During the course of this large-scale conspiracy, the Flowers/Weaver drug trafficking organization was involved in the distribution of between fifteen (15) and fifty (50) kilograms of cocaine hydrochloride. During the course of this investigation, more than fifteen (15) kilograms of cocaine hydrochloride were seized law enforcement. Therefore, the amount of cocaine indirectly attributed to Petitioner and the organization as a whole during the course of this conspiracy is in excess of five (5) kilograms of cocaine hydrochloride.

A change of plea hearing was held before the United States Magistrate Judge on October 19, 2006. (Crim. Doc. No. 877.) The Magistrate Judge entered a Report and Recommendation that same day, in which the Judge recommended that this Court accept the plea agreement. (Crim. Doc. No. 878.) Both the Government and Petitioner filed Notices of No Objection to the Report and Recommendation which later was adopted by this Court. (Crim. Doc. No. 879, filed Oct. 19, 2006; Crim. Doc. No. 881, filed Oct. 19, 2006; Crim. Doc. No. 994, filed Oct. 26, 2006.)

A pre-sentence investigation was conducted by the United States Probation Office prior to the sentencing of Petitioner, and the probation officer submitted initial drafts of the Pre-Sentence Investigation Report ("PSR") to Petitioner and the Government. The PSR reported that Petitioner was responsible for at least five but less than fifteen kilograms of cocaine. (PSR at 7, ¶ 27, dated Feb. 5, 2007.) Therefore, Petitioner's base offense level under the 2006 United States Sentencing Guidelines Manual was 32. (*Id.* at 8, ¶ 33.) He received a three-level reduction for acceptance of

responsibility, resulting in a total offense level of 29. (*Id.* at 9, ¶¶ 39-41.) Petitioner was scored three criminal history points which put him in criminal history category II. (*Id.* at 12, ¶ 51.) Normally, a total offense level of 29 and a criminal history category of II would result in a guideline range of 97 to 121 months of imprisonment. (*Id.* at 17, ¶ 74.) Because the statutory maximum term of imprisonment under 21 U.S.C. § 843(d)(1) for Petitioner's charge in the Superseding Information was four years, however, the PSR calculated the applicable guideline sentence as four years. (*Id.* ¶¶ 73-74.)

Petitioner, through his attorney, filed an Objection to the PSR. (Crim. Doc. No. 1205, filed Feb. 5, 2007.) He objected to: (1) the language in the "offense conduct" section that Petitioner was "involved in the distribution of drugs," (2) his name appearing as the seventh-listed defendant in the Indictment, (3) the probation officer's failure to give a downward adjustment for his minor role in the offense, and (4) the inclusion of an inaccurate charge of battery in the "other criminal conduct" section. (*Id.* at 1-2.) Petitioner also filed a Motion for Reasonable Sentence in which he requested a sentence of time served plus one year of supervised release. (Crim. Doc. No. 1238, filed Feb. 6, 2007.)

In response to Petitioner's objections to the PSR, the probation officer noted that the order of the defendants' names in the Indictment did not reflect their respective culpabilities. (Amended PSR Addendum at 1, dated Feb. 7, 2007.) The probation officer also stated that even if the Court sustained Petitioner's objections, his guideline range would remain well above the statutory maximum, and therefore his guideline sentence still would be forty-eight months. (*Id.* at 2.)

At sentencing, Petitioner abandoned his challenge to the order in which his name appeared in the Indictment. (*See* Crim. Doc. No. 1336 at 7, filed Mar. 7, 2007.) As to the three remaining

objections, the Court sustained the first objection and changed the language "involved in the distribution of drugs" to "facilitated the drug conspiracy." (*Id.* at 8-9.) The Court also stated that it would not consider the battery charge and wrote a notation on the PSR to this effect. (*Id.* at 7-8.) The Court overruled Petitioner's minor role objection, however, finding that he was not over-scored for his participation in the conspiracy. (*Id.* at 9-15.) Regarding Petitioner's Motion for Reasonable Sentence, the Court acknowledged its duty under the law to impose a reasonable sentence but declined to sentence Petitioner as requested in his Motion. (*Id.* at 14-15, 20, 23-26.) Having resolved the pending objections and motions, the Court accepted the plea agreement and sentenced Petitioner to his guideline sentence of forty-eight months of imprisonment. (*Id.* at 25-26, 28; *accord* Crim. Doc. No. 1283, filed February 14, 2007.)

The following day, Petitioner filed a timely Notice of Appeal. (Crim. Doc. No. 1285, filed Feb. 15, 2007.) The Eleventh Circuit Court of Appeals dismissed the appeal due to the valid appeal waiver contained in Petitioner's plea agreement. (Crim. Doc. No. 1555, filed Aug. 20, 2007.)

Petitioner, represented by new counsel, filed the instant Motion to Set Aside Judgment and Sentence on April 4, 2008. (Crim. Doc. No. 1659; Doc. No. 1.) The United States filed a Motion requesting that the Court dismiss Petitioner's Section 2255 Motion without requiring the United States to respond. (Doc. No. 3 at 1.) The Government explained that the Motion should be dismissed "because Harp waived in his plea agreement his right to collaterally attack his sentence and, on appeal, the Eleventh Circuit Court of Appeals has upheld the appeal waiver." (*Id.*) This Court denied the Motion without prejudice, construed the Motion as a Response, and gave Petitioner leave to file a Reply Brief. (Doc. No. 4, filed June 23, 2008.) Petitioner later filed a Reply. (Doc. No. 9.)

**Standards of Review**

## I.    Relief

Section 2255 provides federal prisoners with an avenue for relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2006).  Thus, a federal prisoner may obtain relief under Section 2255 only if his sentence (a) was imposed in violation of the Constitution or federal laws, (b) was imposed by a court without jurisdiction to do so, (c) was in excess of the maximum permitted by the law, or (d) is otherwise subject to attack.  *Id.*; *Boccio v. United States*, Nos. 6:05-cv-179-Orl-19DAB, 6:02-cr-189-Orl-19DAB, 2006 WL 4761060, at *4 (M.D. Fla. Oct. 20, 2006).  If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255.  To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

## II.    Hearing

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  The

Eleventh Circuit Court of Appeals has explained, "A habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir.1989)). However, the Eleventh Circuit continued, "A district court . . . need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel." *Id.* at 1154. In other words, "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007); *see also Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

## Analysis

## I.     Arguments of the Parties and Preliminary Issues of Waiver

Petitioner claims that he should receive relief under Section 2255 because his plea of guilty and waiver of certain appellate and collateral attack rights were not knowing and voluntary due to ineffective assistance of counsel. (Doc. No. 1 at 4.) Specifically, he asserts that his trial counsel: (1) led him to believe he would receive a sentence of less than one year, (2) failed to discuss the sentencing guidelines with him, (3) failed to point out or explain the significance of the five kilograms of cocaine attributed to Petitioner in the plea agreement, (4) failed to explain to Petitioner that the plea agreements of his similarly situated co-defendants did not include the same language attributing over five kilograms of cocaine to them, (5) failed to discuss the inadequacy of the Government's factual recitation in the plea agreement, (6) failed to inform Petitioner that if he went

to trial, the Government would have to prove beyond a reasonable doubt that Petitioner contributed to a conspiracy to possess over five kilograms of cocaine, and (7) failed to adequately explain the sentence appeal waiver to Petitioner.  (*Id.* at 4-8.)  According to Petitioner, if he was aware of these facts and understood their legal significance, he either "would have demanded the plea agreement lie silent as to the amount of cocaine attributable to his use of the telephone" or he "would have proceeded to trial, requiring the government to prove that his use of the telephone attributed to a conspiracy to possess over 5 Kilograms of cocaine." (*Id.* at 6.)  In his Reply Brief, Petitioner also claims that his trial counsel's representation was tainted from the start because: (1) counsel misrepresented his status as a court-appointed attorney and demanded payment from Petitioner for his representation, and (2) there was never a complete and voluntary sentence appeal waiver because the Court's Rule 11 colloquy was confusing.  (Doc. No. 9 at 1, 5, 11-12.)

The United States has not responded to the merits of Petitioner's Motion but instead moves to dismiss because Petitioner waived certain appellate and collateral attack rights in the plea agreement.  (Doc. No. 3.)  The referenced waiver in the plea agreement states in relevant part:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

(Doc. No. 3-2 at 8-9.)  Significantly, this waiver discusses the appeal of Petitioner's *sentence* and is silent as to the appeal of Petitioner's *plea*.  (*See id.*)  Thus, Petitioner did not waive the right to challenge his plea of guilty.  *See, e.g.*, *Cowart v. United States*, 139 F. App'x 206, 208 (11th Cir. 2005) (reaching the same conclusion concerning a similar waiver); *United States v. Copeland*, 381 F.3d 1101, 1104-05 (11th Cir. 2004) (same); *United States v. Bushert*, 997 F.2d 1343, 1347 (11th Cir. 1993) (same).

Petitioner also makes a claim concerning the validity of the sentence appeal waiver.  He asserts that this waiver was not made knowingly and voluntarily because neither his counsel nor the Magistrate Judge conducting the change-of-plea hearing adequately explained to Petitioner the appellate rights that he was waiving.

In an unpublished opinion, *Patel v. United States*, 252 F. App'x 970 (11th Cir. 2007), the Eleventh Circuit concluded that the district court erred in dismissing a Section 2255 motion in which the defendant claimed his guilty plea and waiver of appellate and collateral attack rights were invalid due to the ineffective assistance of his counsel.  *Id.* at 974-75.  The Court found that a facially valid appeal waiver could not preclude Section 2255 claims that challenged the constitutional validity of the plea or waiver itself.  *Id.*  In reaching its decision, the Eleventh Circuit noted that its prior published opinions suggested this result because they stated that a claim of ineffective assistance of counsel in entering or negotiating a plea or waiver casts doubt on the validity of that plea or waiver. *Id.* at 974 (citing *Williams v. United States*, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005)); *see also Bushert*, 997 F.2d at 1351 n.17.  Moreover, the other circuit courts of appeal which have considered the issue have found that a waiver that is the product of ineffective assistance of counsel cannot preclude an ineffectiveness challenge to the validity of that waiver.  *E.g.*, *United States v. White*, 307

F.3d 336, 343 (5th Cir. 2002); *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001);

*DeRoo v. United States*, 223 F.3d 979, 924 (8th Cir. 2000); *Jones v. United States*, 167 F.3d 1142,

1145 (7th Cir. 1999). This is consistent with the well-established rule that an accused who has not

received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound

by his plea. *E.g.*, *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *United States v. Fairchild*, 803 F.2d

1121, 1123 (11th Cir. 1986) (citing *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984)).

Petitioner argues that the waiver of appellate and collateral attack rights is invalid because

he received ineffective assistance of counsel and did not waive these rights knowingly and

voluntarily. Because he challenges the validity of the waiver, his claim is not foreclosed by the plea

agreement. Therefore, the Court will consider the merits of Petitioner's arguments.

## II.     Merits of Petitioner's Motion

### A.     Plea of Guilty

Petitioner contends that the conviction based on his plea of guilty should be vacated because

it was the result of ineffective assistance of counsel. Specifically, Petitioner argues that he did not

enter into the plea agreement knowingly and voluntarily because his counsel misinformed him or

failed to explain to him the exact nature of the agreement and its legal consequences.

As the Eleventh Circuit has explained, "'Because a guilty plea is a waiver of substantial

constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient

awareness of the relevant circumstances and likely consequences.'" *Fairchild*, 803 F.2d at 1123

(quoting *United States v. French*, 719 F.2d 387, 390 (11th Cir.1983)). Moreover, "[i]t is well settled

that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by

competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

Therefore, "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea . . . ." *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).

The Supreme Court has instructed that when considering ineffective assistance claims arising out of the plea process, courts should apply the two-part *Strickland* test. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under this test, a petitioner must show that: (1) counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88. Failure to make the required showing of either deficient performance or sufficient prejudice defeats a petitioner's ineffectiveness claim. *Id.* at 700.

Under the first part of the test, the "performance" prong, "[t]he standard governing counsel's performance is 'reasonableness under prevailing professional norms.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688). When "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (citation and quotation marks omitted). As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . . Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process . . . , in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). "The petitioner's burden to prove by a preponderance of the evidence that counsel's performance was unreasonable is a heavy one."

*Ford*, 546 F.3d at 1333. The petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and show that "no competent counsel would have taken the action that his counsel did take," *Ford*, 546 F.3d at 1333 (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). In reviewing the petitioner's claim, a court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

To meet the second or "prejudice" prong, a petitioner must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In a case in which the petitioner pled guilty, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The United States Supreme Court has clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Under these rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Petitioner asserts that his counsel was ineffective for failing to fully explain the plea agreement to him. He claims to have been prejudiced by this ineffective assistance because if he had fully comprehended the nature of the agreement, understood the Government's burden of proof at trial, and known the significance of the language attributing over five kilograms of cocaine to his

conduct in the plea agreement, he "would have demanded the plea agreement lie silent as to the amount of cocaine attributable to his use of the telephone," or he "would have proceeded to trial, requiring the government to prove that his use of the telephone attributed to a conspiracy to possess over 5 Kilograms of cocaine." (Doc. No. 1 at 6.)

The statements made by Petitioner at his change of plea hearing belie Petitioner's arguments concerning prejudice. First, in his Motion Petitioner contends that if he had fully understood the significance of the language attributing five kilograms of cocaine to his conduct, he would never have entered into the plea agreement. However, the discussion that took place at Petitioner's change-of-plea hearing suggests otherwise. At the hearing, the Magistrate Judge read the First Superseding Information aloud to Petitioner, stating that Petitioner was charged with using a telephone "in the process of committing, causing, and facilitating an unlawful conspiracy to possess with intent to distribute a quantity in excess of five kilograms of cocaine hydrochloride . . . ." (Doc. No. 3-3 at 3; Crim. Doc. No. 1366, filed Mar. 19, 2007.) Later in the hearing, the following discussion took place:

| | |
|---|---|
| THE COURT: | Okay. And now that we have discussed [your admitted actions] and discussed the law, do you understand that what you were doing was assisting [your co-defendant] Mr. Flowers in illegal activity? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Okay. Do you have any questions about that? |
| THE DEFENDANT: | No. |
| THE COURT: | Okay. A factual basis from the United States. |

MR. JANCHA:[2]      Your Honor, the United States would proffer the facts in the Plea Agreement. We'd just add to what Mr. Harp has said is that the government's evidence at trial would show that Mr. Flowers and others were involved in a conspiracy of *five kilograms or more*, specifically distributing *in excessive five kilograms* in Brevard County, Florida, during the time frame of the conspiracy, which extended through the time during which Mr. Harp made this telephone call, as alleged in the First Superseding Information.

THE COURT:      *Five kilograms or more* of cocaine hydrochloride?

MR. JANCHA:      That is correct, cocaine hydrochloride.

THE COURT:      All right. And I don't want to get into it in great detail, but how does the amount of drugs in the underlying conspiracy affect the guidelines on an 843(b)? Is that going to –

MR. JANCHA:      They will calculate that in, and then there's an upper level and a downward level. It can't be higher than or lower than certain levels, based on the amount of drugs, based on (unintelligible), and it balances out.

THE COURT:      That presentence investigation I told you about, Mr. Harp, it's also going to look into the amount of drugs that Mr. Flowers was involved in in his drug trafficking that your calls assisted with, and that's going to be factored into your sentencing guideline range. Now, the maximum possible sentence under this Superseding Information is *four years*. *But I need you to understand that by admitting to this crime, if that's what you choose to do, the amount of drugs involved in the underlying conspiracy are also going to be considered*; do you understand that?

THE DEFENDANT:  Considered more than the Plea Agreement?

THE COURT:      Yeah. Are going to be considered in computing the sentencing guideline range. I know Mr. Handlin talked to you about the sentencing guidelines. They have a little chart like this.

_____

[2] "Mr. Jancha" is former Assistant United States Attorney Rick L. Jancha.

MR. HANDLIN:       We calculated it in accordance with in excess of–

THE COURT:        *Five kilograms?*

MR. HANDLIN:       *–five kilograms. I believe that was a 32.*

THE COURT:        Okay.

MR. HANDLIN:       But 32 is a lot more than 48 months.

THE COURT:        Right.

MR. HANDLIN:       *So we are under the impression that it'll be the 48 months,* unless the government . . .

MR. JANCHA:        We talked about the background, Your Honor, that *he very well could cap out four years;* and I think he understands that. It could possibly be better if he cooperates, things like that.

THE COURT:        All right.  I guess what I'm also trying to make sure you understand is that, even though you do not admit that you were dealing drugs, selling drugs, buying drugs, transporting drugs, anything like that, because the telephone calls that you made were done to facilitate or assist Mr. Flowers in his drug trafficking, the Probation Office is going to look at what Mr. Flowers did, and *those drugs are going to be factored into computing the up-and-down level on the sentencing guideline chart.*  And as–as I told you before, I can't tell you what the sentencing guideline range will be for your case, I don't know; but, certainly, *there's a possibility, you know, worst case basis, that the maximum sentence you can get, four years, is the sentence that you will receive if you plead guilty.*  Do you understand that?

THE DEFENDANT: Yes.

THE COURT:        Okay.  Do you have any questions at all about all of this?

THE DEFENDANT: No.

(Doc. No. 3-3 at 35-38 (emphasis added).)

During this exchange, the drug quantity of "five kilograms" was repeated five times, and the Magistrate Judge twice stated to Petitioner that this amount would be factored into his sentence computation. In addition, Petitioner's counsel stated that Petitioner's offense level would be 32 and that he would likely receive the statutory maximum sentence of four years. This was repeated by Mr. Jancha. Moreover, the Court told Petitioner that he could get four years of imprisonment because of the drug quantity involved. At the hearing, Petitioner stated under oath that he understood this and did not have any questions. After confirming the details of the crime as set forth in the plea agreement, Petitioner stated, "I plead guilty." (*Id.* at 39.)

The Supreme Court has found that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). The Court continued, "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74. Following this holding, the Eleventh Circuit in *Patel* rejected a petitioner's subsequent "self-serving statements" that were "in direct conflict with his statements during the plea colloquy." *Patel*, 252 F. App'x at 975. Because the petitioner had "produced no evidence to challenge the veracity of his sworn testimony," the Eleventh Circuit concluded that the 2255 motion was merely "a last-minute attempt to escape the preclusive effect of the appeal waiver." *Id.*

In the instant case, Petitioner has not argued or presented any evidence that his statements during the change-of-plea hearing were untrue or somehow misrepresented his understanding of the plea agreement or the proceedings. Even if he was not informed by his counsel of the significance

of the drug quantity in his plea agreement, the effect of this language on his sentence was fully discussed at the hearing. Petitioner even asked the Magistrate Judge a question about how the sentencing court would weigh the sentencing guidelines as compared to the plea agreement. After hearing that he would likely receive a four-year sentence, Petitioner stated that he had no further questions about his probable sentence and pled guilty. Thus, Petitioner's claim that he would not have pled guilty if he had been informed of the significance of the drug quantity in his plea agreement is belied by the record and therefore is rejected.

The plea colloquy also undermines Petitioner's claim that he relied on his counsel's representation that he would receive a sentence of less than one year in deciding to plead guilty. The likely sentence of four years (or forty-eight months) was repeated five times during the above-cited discussion. Furthermore, the Magistrate Judge specifically asked Petitioner, "Do you believe anyone has made you any other promise about what sentence you will receive or anything else that will occur in exchange for your plea of guilty?" (Doc. No. 3-3 at 15.) Petitioner responded, "No." (*Id.*) Later, the Magistrate Judge further questioned the Petitioner about representations made about his probable sentence:

> THE COURT: I'm confident Mr. Handlin is giving you his very best estimate of what the guideline range will be, but he can't know for sure until the report is done and the objections are ruled on. So it's important for you to understand that if the sentencing guideline range or the sentence is different than you expected it to be, you would not be allowed to withdraw your guilty plea for that reason. Do you understand that?

> THE DEFENDANT: Yes.

(*Id.* at 17.)

In addition, after the plea hearing and before the sentencing hearing, the probation officer submitted a PSR. This PSR set forth Petitioner's sentence under the applicable statutes and guidelines as forty-eight months. (PSR at 17, ¶ 74.) At sentencing, Petitioner confirmed that he had read the PSR and discussed it with his attorney. (Crim. Doc. No. 1336 at 6.) At no time did Petitioner seek to withdraw his plea or demonstrate any uncertainty as to his likely sentence. This Court explained that Petitioner's guideline range would have been 97 to 121 months of imprisonment but for the four-year statutory maximum. (*Id.* at 27.) The Court continued, "So, because of the way this was charged, the defendant received a much lower sentence than otherwise would have applied, if the government had not filed a communications device charge." (*Id.*) The Court then accepted the plea agreement and sentenced Petitioner to forty-eight months of imprisonment without further objection from Petitioner. (*Id.* at 25-26, 28-29.) Accordingly, Petitioner's claim that he only pled guilty because he was told he would receive a sentence of less than one year is affirmatively contradicted by the record.

Next, Petitioner asserts that his counsel was ineffective for failing to discuss the sentencing guidelines with him. Again, this claim conflicts with Petitioner's statements during the plea colloquy. During the hearing, the Magistrate Judge asked, "Have you and Mr. Handlin talked about how the guidelines might apply in your case?" (Doc. No. 3-3 at 16.) Petitioner responded, "Yes." (*Id.*) The Magistrate Judge also independently explained the nature of the sentencing guidelines to Petitioner. (*Id.* at 12, 16-17.) Moreover, Petitioner's argument on this point is entirely inconsistent with another statement made in his Motion: "Defendant was led to underestimate his maximum sentence, because he was told the court often followed the sentencing guidelines, and he was led to believe that the sentence applicable to him under the Federal Sentencing Guidelines would be much

lower than [it] actually [was] because of the operation [of] 28 U.S.C. § 843 and USSG § 2D1.6." (Doc. No. 1 at 8.)  Because this claim is affirmatively contradicted by the record, it is rejected.

Petitioner also contends that counsel told him that the co-defendants who pled to the same crime received less than twelve-month sentences, but "Defendant was never told that those plea agreements did not contain the same language attributing 5 kilograms of cocaine to them as Defendant[] Mathew Harp's[] plea agreement did." (Doc. No. 1 at 8.)  In addition to the previously cited language from the plea hearing which demonstrates Petitioner was repeatedly informed he would likely receive a four-year sentence, the Magistrate Judge explained:

> I also want to caution you that in a case like this, where there are many other defendants, some of whom are also pleading guilty to telephone counts, the sentencing guideline range for somebody else may not be the same as the sentencing guideline range for you.  For instance, if you or someone else has a particularly significant prior criminal history, that sentencing guideline range can be much higher *or the amount of drugs involved as to any different person will make a difference*. So you can't assume that your guideline range will be similar to anybody else's.

(Doc. No. 3-3 at 17 (emphasis added).)  Despite this explanation, Petitioner still chose to proceed with the plea agreement and plead guilty.  Therefore, this argument is foreclosed by the record.

In addition, Petitioner claims if he had been informed that the Government at trial would have to prove beyond a reasonable doubt that Petitioner contributed to a conspiracy to possess over five kilograms of cocaine, he would have insisted on going to trial, in part because the factual recitation in his plea agreement demonstrated that the amount of cocaine attributable to his conduct was purely speculative.  The record of the plea hearing reveals, however, that Petitioner was fully informed of the Government's burden of proof at trial:

> THE COURT:  Mr. Harp, as you know, you're now charged in an Indictment, but the United States attorney is proposing to charge you with a different offense that has a much lesser penalty than the one

you were facing originally. The document is called a First Superseding Information.

In it, the United States Attorney alleges that on or about May 1, 2006, in Brevard County, Florida, in the Middle District of Florida, that you knowingly and willfully used a communications facility, that is, a telephone in the process of committing, causing, and facilitating an unlawful conspiracy to possess with intent to distribute a quantity in excess of five kilograms of cocaine hydrochloride, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. This, which is commonly called a telephone count, is a violation of Title 21, United States Code, Section 843(b).

This still charges you with a felony offense. It subjects you to the possibility of more than a year in jail, if you're convicted.

* * *

Okay. I just read to you the charge in the First Superseding Information. Have you had a chance to talk with Mr. Handlin about that–

THE DEFENDANT:  Yes.

THE COURT:        –this new charge?

THE DEFENDANT:  Yes.

THE COURT:        Let me tell you what the United States would have to prove before you could be found guilty of the new charge. First, they would have to show that on or about May 1, 2006, you used a communication facility, which simply means you used a telephone in this case. They would have to show that you used that telephone while in the process of committing or facilitating the commission of a conspiracy to possess with intent to distribute a quantity in excess of five kilograms of cocaine hydrochloride, as charged in Count One of the First Superseding Information.

"Used in the process of" or "facilitating" means that the telephone call had something to do with helping the members of the conspiracy achieve the object of the conspiracy. In this

|  |  |
|---|---|
|  | case, as I understand it, what your role was was to help point out where law enforcement was and notify people about pole cameras and other things like that in order to allow the folks who were actually dealing in the drugs to continue to do that. |
|  | They would have to show that you participated knowingly, which means you did it intentionally, not as a result of a mistake or accident. They would also have to prove that you knew at the time what you were doing was against the law, which is the willfully part of the charge. |
|  | Do you understand what would have to be proved before you could be found guilty of this offense? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Okay. Have you had enough time to talk with Mr. Handlin about the charge in the First Superseding Information? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Are you satisfied with his services representing you in this case? |
| THE DEFENDANT: | Yes. |

\* \* \*

|  |  |
|---|---|
| THE COURT: | . . . I need to tell you next about the rights you give up by pleading guilty. You have the right to a trial before a jury composed of twelve people. During the trial, you would be presumed to be innocent. The United States would have to prove that you were guilty beyond a reasonable doubt. You wouldn't have to prove anything. |

(*Id.* at 2-3, 7-8, 19.) As demonstrated by this exchange, the Magistrate Judge informed Petitioner

of the elements of the crime for which he was charged as well as the Government's burden of proof

at trial. Petitioner cannot claim he would not have pled guilty if he had known of these facts when

the record demonstrates that he was so informed and nevertheless pled guilty. Petitioner has not

offered any evidence that the statements he made during the plea hearing were unworthy of belief

or that he did not understand what the Magistrate Judge said to him.  Therefore, the Court rejects this argument as affirmatively contradicted by the record.

Lastly, in his Reply Brief, Petitioner for the first time asserts that his counsel's representation was tainted from the start because counsel misrepresented his status as a court-appointed attorney and demanded payment from Petitioner for his representation.  This argument was not properly raised.  As the Eleventh Circuit has stated, "Arguments raised for the first time in a reply brief are not properly before a reviewing court."  *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994); *accord Bauknight v. Monroe County, Fla.*, 446 F.3d 1327, 1330 n.2 (11th Cir. 2006).  Moreover, even if this Court were to consider the claim, it lacks merit because Petitioner has failed to argue or establish how he was prejudiced by the alleged misconduct of his attorney.  Therefore, Petitioner has not demonstrated a basis for relief on his first claim.

### B.  Waiver of Appellate and Collateral Attack Rights

As his second claim for relief, Petitioner argues that his attorney failed to adequately explain the sentence appeal waiver to Petitioner.  (Doc. No. 1 at 4-8.)  In his Reply Brief, Petitioner also claims that there was never a complete and voluntary sentence appeal waiver because the Court's Rule 11 colloquy was confusing.  (Doc. No. 9 at 1, 5, 11-12.)

The plea agreement set forth in plain language only four scenarios in which Petitioner could attack his sentence: first, the sentence exceeds his applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; second, the sentence exceeds the statutory maximum penalty; third, the sentence violates the Eighth Amendment to the Constitution; and fourth, the Government appeals the sentence.  (Doc. No. 3-2 at 8-9.)  During the plea hearing, the Magistrate Judge explained this waiver to Petitioner as follows:

> Under the Plea Agreement, you're giving up some of your rights to appeal directly or collaterally from a mistake in your sentence. You *can only appeal* if the sentence is above the sentencing guideline range determined by the Court or if the sentence is more than the maximum permitted by the law. If the sentence violates the Eighth Amendment to the Constitution, which is your protection against cruel and unusual punishment and an excessive fine, or if the government appeals, you can appeal for any reason.

(Doc. No. 3-3 at 14-15 (emphasis added).) The Magistrate Judge then asked, "Do you understand how that limits your right to appeal from a mistake in your sentence?" (*Id.* at 15.) Petitioner responded under oath, "Yes." (*Id.*)

Petitioner argues that this language does not satisfy the requirements of Federal Rule of Criminal Procedure 11 which requires a court to address a defendant in open court and inform the defendant of, and determine that the defendant understands, "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). Specifically, Petitioner asserts that the language used by the Magistrate Judge in the instant case is similar to the language found to be deficient in *United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1993). In *Bushert*, the district court asked the defendant the following about his understanding of the sentence appeal waiver in his plea agreement: "Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that the Court imposes, do you understand that?" *Id.* at 1352. The Eleventh Circuit found this language to be confusing because it seemed to be directed to a defendant who had *not* signed a waiver, and it "did not clearly convey to Bushert that he was giving up his right to appeal under *most* circumstances." *Id.* at 1352-53. The Eleventh Circuit held, "We conclude that the district court's Rule 11 colloquy was deficient for failure to discuss sufficiently with Bushert his sentence appeal waiver. We hold that that failure was error." *Id.* at 1353.

The language used by the Magistrate Judge in the instant case, however, is distinguishable from the language used by the district court in *Bushert*. As quoted above, the Magistrate Judge explained that Petitioner was giving up certain appellate and collateral attack rights such that he could appeal his sentence under *only* four circumstances. This conveyed to Petitioner that he would be giving up his appellate rights in *all other* circumstances. When specifically asked if he understood these limitations, Petitioner confirmed that he did. Petitioner has not offered any reason for this Court to disbelieve the sworn statements he made to the Magistrate Judge during the plea hearing. Because he voluntarily pled guilty after discussing with the Magistrate Judge the sentence appeal waiver, Petitioner has demonstrated that he was willing to plead guilty with the knowledge that he was waiving most of his appellate and collateral attack rights. This was part of the benefit of the bargain he struck with the Government. Therefore, Petitioner's claim that he would not have pled guilty if he fully understood the waiver in his plea agreement is foreclosed by the record. Accordingly, the Court rejects Petitioner's second claim for relief.

### Conclusion

Based on the foregoing, the Court finds that Petitioner is not entitled to a hearing because his claims are either facially deficient or affirmatively contradicted by the record. Petitioner has not demonstrated that he is entitled to relief on any of the claims he has raised. Any allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.     The Motion to Set Aside Judgment and Sentence by Petitioner Matthew Harp (Doc. No. 1, filed Apr. 4, 2008) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court is directed to file a certified copy of this Order in Criminal

Case Number 6:06-cr-125-Orl-19KRS.

3.      The Clerk of the Court shall enter judgment for Respondent and close this case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 19, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Petitioner
Attorney for Petitioner
Assistant United States Attorney